## BRADY v. HUBBARD, Mayor, et al.

No. 11041—Opinion Filed Sept. 14, 1920.

(Syllabus by the Court.)

1. **Municipal Corporations—Charter Form of Government.**

Where a city of this state is granted a charter form of government and adopts a charter for its municipal government, such charter constitutes the organic law or constitution of such city in its municipal affairs, and the powers, rights, and limitations which the people of such city vote to themselves in the adoption of such charter are binding upon them until amended or repealed.

2. **Same — Powers — Purchase of Land for Waterworks.**

Where a city charter contains a provision which limits the city in the purchase or lease of land for a waterworks system, to within five miles from the city limits, a proposition to vote bonds for the purchase of land beyond such five-mile limit is invalid.

Error from District Court, Tulsa County; Owen Owen, Judge.

Action by W. T. Brady against C. H. Hubbard and others, mayor and commissioners of the city of Tulsa, to enjoin issuance of municipal bonds. Judgment for defendants, and plaintiff brings error. Reversed.

Biddison & Campbell, for plaintiff in error.

Edward P. Marshall, Breckenridge, Bostick & Daniel, and W. B. Robinson, for defendants in error.

HARRISON, J. This is an appeal from the judgment of the district court of Tulsa county, vacating a temporary restraining order against the mayor and board of commissioners of the city of Tulsa, and dismissing plaintiff in error's petition in the court below.

The case involves the validity of an election held in the city of Tulsa for the purpose of voting on the proposition to issue bonds to the amount of $5,000,000 for the purpose of constructing, operating, and maintaining in a state of repair a complete and efficient waterworks system, including the right to acquire by purchase or rental all land sites, rights of way, easements for dams, reservoirs, etc., and the right to maintain necessary telephone and telegraph lines, pipe lines, and power transmission lines, necessary to a complete operation of such waterworks system.

Plaintiff in error, for himself and other tax-paying citizens, sought to restrain the mayor and other city officers from issuing said bonds and from expending said money, on the grounds that the ordinance authorizing a submission of the proposition, together with the proclamation calling the election, and likewise the ballots upon the proposition were illegal and void for conflict with certain provisions of the state Constitution, viz., sections 26 and 27 of art. 10 of the Constitution, and sections 16 and 19 of said art. 10, and for the further reason that the proposition submitted was for the purpose of purchasing lands and constructing a waterworks system in violation of the charter provisions of the city of Tulsa.

The phases of the proposition voted upon which plaintiff in error argues are in conflict with the Constitution of the state are, in the main, that neither the ordinance, the proclamation, nor ballot distinctly specifies the proposition for which the money is to be used, and that the ordinance, proclamation, and ballot each violate the provisions of the Constitution in that they contain more than one proposition.

These contentions are argued at length and a number of authorities cited upon the different questions by both plaintiff and defendants in error.

As the case presents itself here it is unnecessary to pass upon the questions as to whether the ordinance, proclamation, or ballot was or was not in the proper form contemplated by the Constitution and provided for by law, as these questions for the most part involve mere irregularities, and the forms of said documents, if defective at all—and we are not assuming to decide whether they are or not—may be, and doubtless will be, corrected at a future election.

That the city has power both under our Constitution and under its charter to issue bonds of this character within limitations of the state Constitution and the city charter is not questioned, provided they go about it in the manner prescribed by law; but the serious question presented here is not whether the Constitution of the state would prohibit this particular issue, but whether the charter of the city of Tulsa would prohibit such an issue.

It must be borne in mind that the city of Tulsa is governed by what is known as a charter form of government, and that at an election held for that purpose the city of Tulsa adopted a certain charter. Now this charter constitutes, as it were, the constitution, the organic law, for the government of the city of Tulsa, and, in purely municipal matters affecting the city of Tulsa, such charter, such constitution, is supreme, provided, of course, it is not in conflict with the Constitution of the state. In other words, this charter is to the people of Tulsa a sacred compact, a solemn agreement, which the people of Tulsa entered into in the adoption of same. Under this agreement, this compact, they, the people of Tulsa, agreed and provided that their citizens and their municipal representatives, in governmental affairs, should have certain powers and be circumscribed by certain limitations, among which powers and limitations is subdivision 3 of section 6, art. 2, of the Compiled Ordinances of the City of Tulsa, to wit:

"To purchase or condemn and hold for the city, within, or outside of the city limits within five miles therefrom, all necessary lands for hospital purposes and waterworks and erect, establish and regulate the hospitals, workhouses and poorhouses, and provide for the government and support of the same, and make regulations to secure the general health of the city, and to prevent and remove nuisances, and to make provisions for furnishing the city with water; and water rates shall be fixed annually by the council at their first meeting in June; **provided**, the condemnation of such property outside of the city limits shall be regulated in all respects as provided by law for the condemnation of property for railroad purposes; and **provided, further,** that the police jurisdiction of the city shall extend over such lands and property to same extent as over public cemeteries."

This charter provision clearly authorizes the purchase of lands or other property outside the city limits, but limits such purchases to within five miles of the city limits. In other words, the city clearly had power, under its charter and under the state Constitution, to vote the character of bonds voted for in the instant case and to purchase the property provided for in the instant case, provided such property was within five miles of the city limits, but just as clearly as its charter authorizes such a purchase within

the five-mile limit, it forbids such purchase beyond the five-mile limit.

It appears from the record in the case that the property sought to be purchased in the instant proposition lies some 55 miles outside of the city limits. This very provision of the city charter, restricting the municipal representatives from going beyond the five-mile limit, may have induced many citizens of Tulsa to vote for the adoption of the charter. As to whether it did, we are not able to say; neither is it necessary to say. The fact is that the charter was adopted with this provision in it, this limitation which the citizens of Tulsa placed upon themselves and their municipal representatives in the affairs of city government. Neither the municipal officers nor the citizens themselves can legally violate that agreement entered into among themselves and with themselves, adopted by themselves as an organic law, so long as such provision is in force.

If the charter provisions of the city are inadequate, or if the conditions have so changed that the limitations which the people of Tulsa placed upon themselves in the adoption of their charter are inadequate or work a hardship under present conditions, then the law affords adequate remedy for amending their charter or for repealing any of its provisions, and until the foregoing provision is either repealed or amended, we are constrained to hold that the city cannot legally go beyond the limit which such provision prescribed.

We must hold, therefore, that the city of Tulsa cannot violate the plain provisions of its own charter, nor transcend the limitation which such charter places upon its municipal officers, and must hold as the result that the instant proposition to purchase property and construct a waterworks system beyond the limits prescribed by its own charter is invalid.

The judgment of the trial court is, therefore, reversed, with instructions to reinstate the petition of plaintiff below, and to restrain the municipal officers herein affected from issuing the bonds or expending the money sought to be raised under the proceedings herein presented.

Reversed.

RAINEY, C. J., and KANE, PITCHFORD, JOHNSON, McNEILL, HIGGINS, and BAILEY, JJ., concur.